UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| UNITED STATES OF AMERICA, | 2:09-CV-1307 JCM (PAL) |
|---|---|
| Plaintiff, | |
| v. | |
| LYDI OWEN, | |
| Defendant. | |

**ORDER**

Presently before the court is appellant Lydi R. Owen's appeal from United States Magistrate Judge Peggy Leen's decision in *United States of America v. Owen*, 2:09-mj-00013-PAL. Appellant filed an opening brief. (Doc. #5). Appellee United States of America filed an answering brief. (Doc. #8). Appellant then filed a reply brief. (Doc. #10).

**I.    Background**

On July 8, 2009, Magistrate Judge Leen found appellant guilty of being in actual physical control of a vessel under the influence of alcohol and failure to have navigation lights as required. Tr. 78:5-23. Appellant appeals her conviction for being in actual physical control of a vessel under the influence of alcohol. (Doc. #5).

On June 25, 2008, appellant and a male companion were boating in the Lake Mead National Recreation Area on appellant's 23-foot sailboat. Appellant was the owner and captain of the sailboat. Tr. 40:11-13. At 11:00 p.m., the National Park Service received a call that there had been a boat accident on Lake Mead. *Id*. at 9:7-10. National Park Service Rangers Shannon Hope and

**James C. Mahan**
**U.S. District Judge**

1  Michelle Schonzeit were sent to aid appellant and her companion. *Id*. at 9:10-12.

2  When they reached the vessel, appellant was standing within arm's length of the tiller. *Id*.
3  at 23:9-24. It appeared to the rangers that appellant had been drinking. When asked, appellant
4  acknowledged that she had a few drinks while on the boat. *Id*. at 43:14-17. Based on the rangers'
5  observations of appellant as well as her statement that she had been drinking, the rangers placed
6  appellant under arrest for operating a vessel under the influence of alcohol. *Id*. at 43-44:25-7.

7  When the rangers inspected the boat, they found that the sails were down and the motor was
8  not running, *id*. at 10:3; the mast support lines were damaged, *id.* at 40:20-22; the battery was
9  disconnected and loose, disabling the entire electrical system, *id.* at 13:19-21; and the motor did not
10 work because there was no gas in the boat *id*. at 23:2. The record does not state conclusively
11 whether or not the battery could have been easily reconnected or the sails raised despite the damaged
12 mast support lines. There is no indication that the tiller or the rudder were not in working order.

13 Appellant's primary contentions are: (1) it is not possible to be in actual physical control of
14 a vessel that is inoperable and has no means of movement or control; (2) the vessel at issue in the
15 instant case was such an inoperable vessel; and (3) the owner and captain of a disabled vessel does
16 not have "actual physical control" over the vessel simply because she is seen on deck near the tiller.
17 (Doc. #5).

18 **II.   Discussion**

19                              Standard of review

20 If, "after viewing the evidence in the light most favorable to the prosecution, any rational trier
21 of fact could have found the essential elements of the crime beyond a reasonable doubt," this court
22 must affirm the ruling of the magistrate judge. *United States v. Carranza*, 289 F.3d 634, 641-42 (9th
23 Cir. 2002). The magistrate judge's legal conclusions are reviewed *de novo*. *See United States v.*
24 *Vesikuru*, 314 F.3d 1116, 1119 (9th Cir. 2002).

25     A.    Possibility of actual physical control

26 Pursuant to 36 C.F.R. § 3.10(a)(1), "[o]perating or being in actual physical control of a vessel
27 is prohibited while (1) [u]nder the influence of alcohol . . . to a degree that renders the operator

28

**James C. Mahan**
**U.S. District Judge**                               - 2 -

1  incapable of safe operation." Appellant asserts that the vessel was inoperable when the rangers
2  arrived and, therefore, incapable of being the subject of actual physical control. The parties spend
3  significant time addressing the issue of whether one can have actual physical control over an
4  inoperable vessel. However, for the reasons stated below, this court finds that the vessel in the
5  instant case was operable. Therefore, the issue of whether operability is a prerequisite to "actual
6  physical control" under 36 C.F.R. § 3.10(a)(1) need not be addressed here.

   B.   Operability of vessel

   The term "vessel" is defined by 36 C.F.R. § 1.4 as "every description of watercraft, or other artificial contrivance used, or capable of being used, as a means of transportation on the water." Because even a wood plank or blow-up raft qualifies as a vessel under this definition, the government reasons that operability is not contingent upon any particular means of propulsion or control, so long as some means of control are available. (Doc. #8).

   There is no requirement pursuant to 36 C.F.R. § 3.10(a)(1) that actual physical control must manifest itself in any particular way. At any time that operation of a vessel is possible through any means accessible to a potential operator, actual physical control is also possible. *See* 36 C.F.R. § 3.10(a)(1). Whether or not this vessel was operable is a question of fact which must be answered "after viewing the evidence in the light most favorable to the prosecution . . . ." *See Carranza*, 289 F.3d 634 at 641-42.

   Here, the tiller, which controls the rudder, was operational. Appellant argues that a functional tiller was of no use because without gas, battery power, or sails the boat could not be made to move. Appellant analogizes manipulation of the tiller in this case to "turning the steering wheel of a gasless, battery-less car while stationary in a parking lot with no key in the ignition." (Doc. #10).

   The analogy fails because, when viewed in the light most favorable to the prosecution, the facts do not suggest that the boat in the instant case was stationary. Appellant concedes that the boat was in choppy water and that it was adrift. *Id*. Regardless of whether a vessel is self-propelled or propelled by the waves, the current, or wind hitting the boat itself, if the vessel is moving, it is

**James C. Mahan**
**U.S. District Judge**

- 3 -

analogous to a coasting vehicle, not a stationary vehicle. If a vessel is drifting, actual physical control may remain. *See United States v. Stephenson*, 2007 WL 2405727, *7 (W.D. Va. Aug. 17, 2007) (if a vehicle can be readily made operable, or put in motion by coasting, actual physical control may remain); *see also State v. Adams*, 142 Idaho 305, 307, 127 P.3d 208, 210 (Ct. App. 2005) (a vehicle is reasonably capable of being put into operation if it is disabled but there is the potential for coasting). If the boat is moving, steering it using the tiller will have some impact.

Furthermore, this craft may have been "readily made operable" and, therefore, actually physically controllable. *See Stephenson*, 2007 WL 2405727, at *7. The mast support lines were damaged and the battery was disconnected and loose, but there is no evidence in the record suggesting that the sails could not still be raised or that the battery could not be readily reconnected. Therefore, when the evidence is viewed in the light most favorable to the prosecution, the magistrate judge could reasonably conclude that the vessel could have been readily made operable at the time of appellant's arrest.

For the foregoing reasons, the vessel in the instant case was operable and, therefore, capable of being placed under actual physical control. The only remaining question is whether appellant was in actual physical control of her vessel at the time she was observed and contacted by the rangers.

C.   Actual physical control of vessel

Pursuant to 36 C.F.R. § 3.10(a)(1), "[o]perating *or* being in actual physical control of a vessel" is prohibited if the operator is incapable of maneuvering the vessel safely. (emphasis added). "If 'being in actual physical control' is to mean anything, it must refer to something less than actual operation." *United States v. McFarland*, 369 F. Supp. 2d 54, 57 (D. MD. 2005). In *McFarland*, a driver asleep in the driver's seat was deemed to be in actual physical control because he was in the car and could potentially drive it. Once the potential to operate the vessel exists, a rational trier of fact could find that standing within arm's length of the tiller (tr. 23:9-24) of a boat while intoxicated amounts to actual physical control in violation of 36 C.F.R. § 3.10(a)(1).

**III.   Conclusion**

Viewed in the light most favorable to the prosecution, a rational trier of fact could easily

James C. Mahan
U.S. District Judge

- 4 -

conclude that the vessel in the instant case was operable, despite the damage it had sustained. Appellant was found intoxicated within arm's length of the tiller, and a reasonable trier of fact could conclude that appellant was in actual physical control of the vessel at the time she was placed under arrest.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that appellant Lydi R. Owen's appeal from United States Magistrate Judge Peggy Leen's decision (doc. #5) be, and the same hereby is, DENIED.

DATED April 6, 2012.

*/s/ James C. Mahan*
**UNITED STATES DISTRICT JUDGE**

**James C. Mahan**
**U.S. District Judge**